UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America, ex rel.                    Civ. No. 14-187 (PAM/BRT)
Michael Cherwenka,

                    Plaintiff,

v.                                                   **MEMORANDUM AND ORDER**

Fastenal Company, Wells Technology,
Inc., Cummins, Inc., ICS, Inc., and
John Does 1-99,

                    Defendants.

_____

        This matter is before the Court on Defendants' Motions to Dismiss or for

Judgment on the Pleadings.  For the following reasons, the Motions are granted.

**BACKGROUND**

        This lawsuit arises out of an allegedly fraudulent scheme between industrial

suppliers and their customers to procure government contracts and benefits reserved for

qualifying small businesses.

        Defendant Fastenal Company is an international distributor of industrial supplies

and parts, with $3.1 billion in annual net sales in 2012.  (Compl. (Docket No. 1) ¶ 17.)

Fastenal employs about 17,000 people.  (Id.)  Defendant Wells Technology, Inc., is an

industrial distributer that employs about 47 people and is a small disadvantaged business

certified by the Small Business Administration ("SBA").  (Id. ¶¶ 18, 102 (citing 13

C.F.R. Pt. 124).)  Wells Technology also receives government benefits because its owner

is a member of the Red Lake Ojibwa Tribe.  (Id. ¶ 18.)  Relevant to this action, and

seemingly at the root of this lawsuit, Wells Technology operates a for-profit Fastenal distribution channel. (Id.) Fastenal and Wells Technology distribute supplies and parts to contractors and industrial consumers, including Defendants Cummins, Inc., and ICS, Inc. Cummins develops, sells, and services diesel engines and generation systems, and it has procured about $368.4 million in government contracts since 2001. (Id. ¶ 19.) ICS has executed about $100 million in government contracts on various industrial construction projects since 2001. (Id. ¶ 20.)

The SBA arranges for the performance of certain government contracts as set-aside contracts, to be awarded "to socially and economically disadvantaged small businesses." 15 U.S.C. § 637(a)(1)(B). To bid on a set-aside contract, a business must certify that it is a small business, typically through registration in a federal database called the System for Award Management ("SAM"). (Compl. ¶ 36.) Certification as a small business is a material term for these set-aside contracts. And in addition to small business set-aside contracts, the federal government may also award diversity credit on contracts performed by small businesses. See 15 U.S.C. § 637(d)(4)(E). The Complaint references numerous contracts and information about set-aside contracts awarded to Defendants. (See, e.g., Compl. ¶¶ 90-91, 140-62.) While they dispute whether the Complaint sufficiently specifies representative examples, Defendants do not appear to dispute that at least some of their business has benefited from the performance of set-aside contracts or the award of some amount of diversity credit on prime government contracts.

In 2005, Wells Technology became "an authorized distribution channel for the Fastenal company," and the SBA approved this business relationship through a mentor/protégé agreement in 2006.   (<u>Id.</u> ¶¶ 105, 107.)   To obtain approval, a representative of the SBA investigated the business relationship, because the SBA cannot approve a mentor/protégé relationship if it "determines that the agreement is merely a vehicle to enable the mentor to receive 8(a) contracts."  13 C.F.R. § 124.520(e)(3).  As part of the investigation, the representative reviewed documents and questioned Wells Technology regarding its Fastenal distribution business.  (Aff. of Wendy Knudson Ex. 7 (Docket No. 84-7) (Wells Technology Presentation) at 39, 41.)[1]  Wells Technology also advertises some of this information on its website.  (<u>See, e.g.</u>, Compl. at 29 n.16.)  The SBA's investigation revealed that Wells Technology buys and owns the parts it supplies, accepts purchase orders, assumes risk of loss, collects payments, and pays sales taxes. (Compl. ¶ 110; Wells Technology Presentation at 39, 41.)  But Fastenal distributes the products, and Wells Technology never takes physical possession of them.

Relator Michael Cherwenka is a salesperson for another distributor of industrial supplies that directly competes with Wells Technology.  (Compl. ¶¶ 5, 15.)  He claims that Wells Technology's Fastenal distribution business is a "sham front" that has enabled Defendants to procure set-aside contracts that Fastenal and Wells Technology could not

---

[1]   On a motion to dismiss, a district court "may 'consider matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'"  <u>United States ex rel. Ambrosecchia v. Paddock Labs., LLC</u>, 855 F.3d 949, 954 (8th Cir. 2017) (quoting <u>United States ex rel. Paulos v. Stryker Corp.</u>, 762 F.3d 688, 696 (8th Cir. 2014)).  The SBA's approval of the mentor/protégé agreement is referenced in the Complaint, and these documents were submitted to the SBA.

otherwise access, and that Cummins and ICS knowingly use Wells Technology as a mechanism to obtain diversity credit while accessing Fastenal's distribution network. (Id. ¶¶ 3, 4.)  Despite the SBA's approval of this mentor/protégé relationship, Cherwenka believes that Fastenal controls Wells Technology's business so that the two companies are affiliates.  An affiliation exists if "one controls or has the power to control the other." 13 C.F.R. § 121.103(a)(1).  And the SAM explicitly provides that a business must add to its employee count the number of people employed by its affiliates.  (Compl. ¶ 69.) Because he believes Wells Technology and Fastenal are affiliated, Cherwenka argues that Wells Technology cannot represent itself as a small business and that its decision to do so on numerous bids for set-aside contracts, on its mentor/protégé application, and on its annual SAM updates is fraudulent.

In support of its claims regarding affiliation, the Complaint alleges that Wells Technology is an authorized Fastenal reseller.  (Id. ¶ 105.)  It points out that Fastenal's website advertises opportunities to obtain diversity credit by using one of its resellers, like Wells Technology.  (Id. ¶¶ 155-57.)   The Complaint also alleges that Wells Technology's website contains direct links to Fastenal's website and advertises Fastenal employees as points of contact for its distribution business.  (Id. ¶¶ 112, 114.)  And the website outlines numerous statistics on employees, office locations, and business revenue for Wells Technology and Fastenal.  (Id. ¶¶ 84-91, 118-20, 173-77.)

The Complaint also references two conversations that Cherwenka had with representatives of Cummins and ICS regarding their small business set-aside contracts. The Cummins representative allegedly told Cherwenka that Cummins "use[s] Wells

Technology through Fastenal to satisfy their diversity requirements" on certain set-aside contracts.  (Id. ¶ 170.)   The ICS representative allegedly told Cherwenka about the benefits of working with Fastenal and that those benefits "would make it almost impossible for [ICS] to change vendors."  (Id. ¶ 171.)

Cherwenka believes that the government was harmed by this scheme because set-aside contracts normally reserved for small businesses ultimately went to Fastenal instead of to legitimate small businesses, which "sabotaged" the growth of small businesses and offends the purpose of the SBA.  (Id. ¶ 182.)   The three-count Complaint claims that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., by receiving payments or benefits from the United States for false or fraudulent claims (Count I), making false statements to the United States on those allegedly false claims (Count II), and conspiring to commit violations of the FCA (Count III).   (Compl. ¶¶ 193-207.)  The Government declined to intervene. (Docket No. 32.)  Defendants now move to dismiss the Complaint or move for judgment on the pleadings.

**DISCUSSION**

**A.     Standard of Review**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the allegations in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the non-moving party.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  But the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled.  Westcott, 901

F.2d at 1488.  The Court also reviews a Rule 12(c) motion to dismiss "under the standard that governs 12(b)(6) motions."  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  Twombly, 550 U.S. at 556.

A complaint that alleges "violations of the FCA must [also] comply with Rule 9(b)," which requires stating with particularity "the circumstances constituting fraud." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006); see Fed. R. Civ. P. 9(b).

## B.    Rule 9(b)

Generally, Rule 9(b) requires identification of "the 'who, what, where, when, and how' of the alleged fraud."  Joshi, 441 F.3d at 556 (quoting United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003)).  But a relator who alleges a "systematic practice or scheme of submitting fraudulent claims" may satisfy the Rule 9(b) requirement by "alleging particular details of a scheme to submit false claims paired

6

with reliable indicia that lead to a strong inference that claims were actually submitted." United States ex rel. Thayer v. Planned Parenthood of the Heartland, 765 F.3d 914, 917 (8th Cir. 2014) (quotation omitted). "[T]he relator must provide sufficient details 'to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" Id. at 919 (quoting Costner, 317 F.3d at 888). Defendants argue that the Complaint fails to satisfy the particularity requirement under Rule 9(b). Cherwenka contends that the Complaint sufficiently alleges a systematic practice or scheme of submitting fraudulent claims under Thayer.

The Complaint asserts fraudulent inducement of government contracts. "Fraudulent inducement requires a plaintiff to show: (1) the defendant made a 'false record or statement'; (2) the defendant knew the statement was false; (3) the statement was material; and (4) the defendant made a 'claim' for the government to pay money or forfeit money due." United States ex rel. Miller v. Weston Educ., Inc., 840 F.3d 494, 500 (8th Cir. 2016). "FCA liability attaches to 'each claim submitted to the government under a contract so long as the original contract was obtained through false statements or fraudulent conduct.'" Id. at 499 (quoting In re Baycol Prods. Litig. (Baycol I), 732 F.3d 869, 876 (8th Cir. 2013)).

## 1.    Reliable Indicia

On claims of fraudulent inducement of government contracts, to sufficiently allege a "reliable indicia that lead[s] to a strong inference that claims were actually submitted," Thayer, 765 F.3d at 917 (quotation omitted), Cherwenka need not plead the details of Defendants' accounting practices. "[C]laims for payment subsequently submitted under

a contract initially induced by fraud do not have to be false or fraudulent in and of themselves." <u>Baycol I</u>, 732 F.3d at 876.  But Cherwenka must nevertheless provide representative examples of fraudulently induced government contracts.

With respect to Fastenal, Wells Technology, and Cummins, Cherwenka has provided such examples.  The Complaint alleges specific contracts awarded to Cummins that involved Wells Technology and Fastenal.  (Compl. ¶¶ 164, 170.)  It also alleges numerous other contracts awarded to Wells Technology that relied on its Fastenal distribution business.  (<u>Id.</u> ¶¶ 133-34, 142-48, 149-53.)  These representative examples all occurred during the life of the mentor/protégé relationship.  Fastenal, Wells Technology, and Cummins do not dispute their involvement in these contracts.  Thus, Cherwenka has established reliable indicia with respect to Fastenal, Wells Technology, and Cummins.

On the other hand, Cherwenka failed to plead any representative examples of ICS's involvement in the alleged scheme.  The Complaint broadly states that "ICS has procured close to $100 million in prime federal contracts since 2001." (<u>Id.</u> ¶ 20.)  But Cherwenka cannot "rely on the broad allegation that every claim submitted . . . is false in order to satisfy the particularity requirement." <u>United States ex rel. Dunn v. N. Mem'l Health Care</u>, 739 F.3d 417, 420 (8th Cir. 2014).  He has not satisfied the reliability prong with respect to ICS, because the Complaint does not identify even one fraudulently induced contract that involved ICS.  His claims against ICS must be dismissed.

## 2. Particular Details

A relator must also "alleg[e] particular details of a scheme to submit false claims" to satisfy Rule 9(b)'s particularity requirement.  <u>Thayer</u>, 765 F.3d at 917 (quotation

omitted).  "The level of particularity required depends on . . . the nature of the case and the relationship between the parties."  BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).  Because each party's alleged involvement in the fraudulent scheme differs, the Court will address each Defendant separately to determine whether Cherwenka sufficiently alleged particular details of the fraudulent scheme.

### a.  Fastenal

First, Fastenal argues that the Complaint fails to allege that it actually procured or performed on contracts for Wells Technology.  The Complaint alleges that Fastenal's website advertises its involvement in the distribution services of its resellers, like Wells Technology, and that companies may use Fastenal resellers on "diversity spend opportunities."  (Compl. ¶¶ 106, 155.)  Additionally, the Complaint alleges that representatives of Cummins and ICS told Cherwenka that "Fastenal handles the products, ordering, and on-site deliveries" on contracts for Wells Technology.  (Id. ¶ 170.)  These are sufficient allegations regarding Fastenal's involvement on the relevant contracts for Wells Technology.

Fastenal also argues that Cherwenka has failed to allege any facts from which the SBA could have concluded that it was affiliated with Wells Technology and that the Complaint contains no factual allegations that it—or Wells Technology—made any false statement or misrepresentation.

Affiliation exists if Fastenal exceeds the scope of assistance authorized by the SBA under a mentor/protégé agreement, or if Fastenal "has the power to control" Wells Technology.  13 C.F.R. § 121.103(a)(1).  The SBA regulations also provide that "[n]o

determination of affiliation or control may be found between a protégé firm and its mentor based on the mentor/protégé agreement or any assistance provided pursuant to the agreement." Id. § 124.520(d)(4).  However, "[a]ffiliation may be found . . . for other reasons as set forth in this section." Id. § 121.103(b)(6).

Here, the SBA approved a mentor/protégé agreement between Fastenal and Wells Technology in 2006.  Cherwenka does not allege that Fastenal exceeded its scope of authority under the mentor/protégé agreement.  Rather, he alleges that the agreement "was merely a legal imprimatur designed to disguise their affiliate relationship," and that Fastenal and Wells Technology were "affiliates before, during and after the Mentor/Protégé Agreement."  (Relator's Fastenal Opp'n Mem. (Docket No. 92) at 37.) Put simply, Cherwenka believes that Wells Technology could not legitimately claim that it was a small business after it began operating as a Fastenal reseller, because this distribution business formed an affiliation with Fastenal.

This argument suffers from a fatal error.  The SBA's approval of the mentor/protégé agreement contemplated Wells Technology's distribution business with Fastenal, and it nevertheless qualified Wells Technology as a small business protégé.  See 13 C.F.R. § 124.520(c)(1), (e)(3).  The Complaint fails to allege any additional facts regarding Wells Technology's distribution business—either misrepresented or not disclosed to the SBA—that would have required the SBA to conclude that the two businesses are affiliated.  Cherwenka argues that their relationship as affiliates is clear because he did not discover any evidence that Fastenal took advantage of the business benefits generally afforded mentors, such as operating as a joint venture for government

prime contracts.   See 13 C.F.R. § 124.520(d)(1) ("A mentor and protégé may joint venture . . . .").  But there is no requirement that a mentor must form a joint venture with its protégé, and Cherwenka has not provided any authority to suggest that choosing not to operate as a joint venture indicates the existence of a fraudulent scheme.

Because Cherwenka has failed to allege with particularity Fastenal's involvement in the fraudulent scheme, the Court must dismiss the Complaint against Fastenal.

### b.    Wells Technology

Wells Technology argues that the Complaint fails to allege the particular details of any fraudulent act and that it did not misrepresent itself as a small business because it was never affiliated with Fastenal.  Cherwenka argues that he alleged the fraudulent scheme with sufficient specificity because the Complaint claims that Wells Technology falsely represented that it was a small business in its initial representation to the SBA, in every annual update, and in every bid it made for a small business set-aside contract.  While Cherwenka may have sufficiently alleged when the misrepresentations occurred, he fails to allege any factual details about those misrepresentations.  In short, Cherwenka does not identify any specific misrepresentation that would further the alleged fraudulent scheme.  It is insufficient to claim that Wells Technology's "representations to the SBA were false and misleading half-truths."   (Relator's Wells Technology Opp'n Mem. (Docket No. 98) at 27); see BJC Health Sys., 478 F.3d at 917 ("Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.") (quotation omitted).

Cherwenka argues that Wells Technology misrepresented itself because multiple elements of control and dependence establish that Wells Technology was actually affiliated with Fastenal. First, he believes that Wells Technology misrepresented its reliance on Fastenal as a mentor, because the mentor/protégé agreement does not indicate that Fastenal would be performing on Wells Technology's contracts. (See Compl. ¶ 107.) But the agreement itself states that Fastenal performs distribution services. (Aff. of Wendy Knudson Ex. 5 (Docket No. 84-5) (Mentoring Business Agreement) at 1.) And other documents and communications between the SBA and Wells Technology clearly demonstrate that Wells Technology determines its resale price, exercises independent business judgment, and accepts numerous business risks including title and risk of loss.[2] (Id. at 2.) The Court sees no specific factual allegation to contradict this documentation.

Cherwenka contends that a joint venture is the only means for a mentor to assist its protégé in the performance of a contract. But Fastenal did not need to enter into a joint venture with Wells Technology. See 13 C.F.R. § 124.520(d)(1). And the SBA's approval specifically contemplated Wells Technology's distribution business, so it must have concluded that Wells Technology and Fastenal were not affiliated. Id. § 124.520(d)(4) ("No determination of affiliation or control may be found between a

---

[2] While the parties' arguments regarding the nonmanufacturer rule are not appropriate for motions to dismiss, Defendants' arguments on the issue are also compelling. 13 C.F.R. § 121.406(b). "[A] nonmanufacturer may take ownership of supplies if title to the supplies passes to the nonmanufacturer under a contract, even if they do not physically take possession of the supplies." Wear Mark, Inc. d/b/a All Seasons Apparel, SBA No. SIZ-5397, 2012 WL 4359132, at *8 (Sept. 12, 2012). This appears to be precisely how Wells Technology operated its Fastenal distribution business.

protégé firm and its mentor based on the mentor/protégé agreement or any assistance provided pursuant to the agreement."); id. § 124.520(e)(3).

The Complaint's remaining factual allegations regarding Wells Technology's dependency are only broad recitals of its revenue and other business statistics. (See, e.g., Compl. ¶¶ 116-19, 122-24.) These allegations appear to support Cherwenka's belief—based on his own industry knowledge—that it is impossible to generate such a high amount of revenue with so few employees. But this conclusory allegation is not particularized and cannot satisfy Rule 9(b). Cherwenka's FCA claims against Wells Technology fail because he has failed to allege fraud with particularity.

### c.   Cummins and ICS

Cummins and ICS maintain that the Complaint fails to satisfy the 9(b) particularity requirement because it does not contain specific details about their involvement in the allegedly fraudulent scheme. Indeed, as ICS argues, it appears that any company that used Wells Technology's Fastenal distribution channel to perform on a government set-aside contract would necessarily be lumped up in the alleged scheme. And any other Fastenal reseller would also be a participant. Cherwenka contends that he satisfied the pleading requirement by detailing his research into this alleged scheme, his industry experience, and his discussions with representatives of Cummins and ICS.

The Complaint alleges that Cherwenka had a discussion with a Cummins representative about two military projects:

> The Cummins representative said they use Fastenal. When Relator reminded the Cummins representative that these were postings for small businesses, she said that they use Wells

Technology through Fastenal to satisfy their diversity requirements for these contracts.

(Compl. ¶ 170.)  The Cummins representative also told Cherwenka that "Fastenal handles the products, ordering, and on-site deliveries."  (<u>Id.</u>)  Cherwenka alleged that an ICS representative "told him about the advantages of working with Fastenal and emphasized its customer service, VMI and vending machines.  Also stated as an advantage was that the relationship helped their purchasing department reach their supplier diversity requirements through Wells Technology."  (<u>Id.</u> ¶ 171.)

Cummins and ICS contend that these discussions do not indicate that they knew Wells Technology was a sham small business or that Wells Technology's Fastenal distribution channel was anything but legitimate, because the SBA would not have approved the mentor/protégé agreement if it determined that the assistance was "merely a vehicle to enable the mentor to receive 8(a) contracts."  13 C.F.R. § 124.520(e)(3).  The Court agrees.

At best, the Complaint's factual allegations only establish that Cummins and ICS knew that Wells Technology used Fastenal for its distribution.  The Complaint contains no allegation that Cummins or ICS believed that the distribution arrangement was fraudulent or that Fastenal and Wells Technology were affiliated.  Cherwenka has failed to allege sufficient, particularized evidence of fraud against Cummins and ICS, and the FCA claims against them must be dismissed.

**B.** **Public Disclosure Bar**

Fastenal, Wells Technology, and Cummins argue that the public disclosure bar precludes Cherwenka from bringing his FCA claims, even if his allegations satisfy Rule 9(b). "The public disclosure bar requires an FCA claim to be dismissed where the allegations are based on information that has been publicly disclosed, unless the person making the claim 'is an original source of the information.'" Ambrosecchia, 855 F.3d at 953 (quoting 31 U.S.C. § 3730(e)(4)). The purpose of the public disclosure bar is "to encourage private enforcement suits by legitimate whistleblowers while barring suits by opportunistic qui tam plaintiffs who base their claims on matters that have been publicly disclosed by others." United States ex rel. Newell v. City of St. Paul, 728 F.3d 791, 794 (8th Cir. 2013) (quotation omitted). Dismissal is thus required if (1) "the defendant has shown public disclosure under § 3730(e)(4)(A)," (2) such disclosures support "the critical elements of the fraudulent transaction," and (3) "the relator does not fit § 3730(e)(4)(B)'s definition of 'original source.'" United States v. CSL Behring, L.L.C., 855 F.3d 935, 941, 947 (8th Cir. 2017) (quoting Paulos, 762 F.3d at 692; United States ex rel. Rabushka v. Crane Co., 40 F.3d 1509, 1512 (8th Cir. 1994)).[3]

---

[3] Congress amended the public disclosure bar in 2010. Ambrosecchia, 855 F.3d at 953. The Court will analyze the public disclosure bar under the amended version of § 3730(e)(4), because the amended version was in effect at the time the lawsuit was filed. In re: Baycol Prods. Litig. (Baycol II), 870 F.3d 960, 960 n.* (8th Cir. 2017) (applying the pre-2010 version of the public disclosure bar because it "was in effect when [the relator] brought her action").

1. **Public Disclosure**

The FCA enumerates three categories of public disclosures. 31 U.S.C. § 3730(e)(4)(A). Defendants argue that their business relationship was publicly disclosed through news media and a federal investigation. See 31 U.S.C. § 3730(e)(4)(A)(ii)-(iii).

Defendants believe that the details of the relationship between Fastenal and Wells Technology were readily available via website. Wells Technology also notes that the SBA described Wells Technology's business relationship with Fastenal on the SBA's website. Cherwenka argues that a website does not qualify as news media under § 3730(e)(4)(A)(iii).

The FCA does not define news media, but the Supreme Court has stated that the term has "broad sweep." United States ex rel. Kraxberger v. Kan. City Power & Light Co., 756 F.3d 1075, 1079 (8th Cir. 2014) (quoting Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401, 408 (2011)). In Kraxberger, the Eighth Circuit concluded that information available on a state public service commission's website "qualif[ied] as disclosure through the news media." Id. It reasoned that the information was "publicly available" through the website and that other courts have held that information on "readily accessible websites" was news media. Id. (citing United States ex rel. Osheroff v. HealthSpring, Inc., 938 F. Supp. 2d 724, 732-33 (M.D. Tenn. 2013); United States ex rel. Doe v. Staples, Inc., 932 F. Supp. 2d 34, 40 (D.D.C. 2013) ("Courts in our Circuit . . . have construed the term 'news media' to include readily accessible websites")).

Cherwenka argues that this matter is distinguishable from the cases cited because Wells Technology does not function as a news outlet. But a website need not function as a news outlet to qualify as news media under § 3730(e)(4)(A)(iii). See, e.g., United States ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 813 (11th Cir. 2015) (finding that a medical clinic's website qualified as news media). In Osheroff the Eleventh Circuit held that a medical clinic's website was news media because it was "publicly available" and "intended to disseminate information about the clinics' programs." Id. This is analogous to the matter at hand. And Cherwenka has not cited any case holding that information publicly available on a website is not news media. The information disclosed on the websites of the SBA and Wells Technology qualifies as news media under § 3730(e)(4)(A)(iii).

Even if these websites are not news media, Defendants argue that the SBA knew and approved of their business relationship, and that all documentation submitted to the SBA through its mentor/protégé approval process qualifies as public disclosure under § 3730(4)(A)(ii) as information disclosed through a federal investigation. Cherwenka argues that disclosure to the SBA does not qualify as a public disclosure because the mentor/protégé agreement was not in the public domain.

The SBA's approval of the mentor/protégé agreement between Fastenal and Wells Technology specifically contemplated Wells Technology's "distribution market as a Fastenal distributor," because the SBA representative who approved this agreement stated that he wanted to "gain a full understanding of the Fastenal distribution arrangement." (Aff. of Wendy Knudson Ex. 3 (Docket No. 84-3) (SBA Letter) at 2-3.)

He also asked specific questions and requested numerous documents memorializing Wells Technology's distribution business with Fastenal.   (Id. at 1-2.)   The Court concludes that approval of the mentor/protégé agreement is the result of a federal investigation or audit, and that all documents and information disclosed to the SBA representative are therefore publicly disclosed under § 3730(4)(A)(ii).   Cf. Glaser v. Wound Care Consultants, Inc., 570 F.3d 907, 911, 913-14 (7th Cir. 2009) (stating that a nurse from the Centers for Medicare and Medicaid Services investigating about "billing irregularities" was a public disclosure under § 3730(e)(4)(A)(ii) as a federal audit or investigation).

However, the public disclosure bar only applies if the publicly disclosed information "encompass[es] the essential element[s] of the fraud alleged." Rabushka, 40 F.3d at 1514.  The information must "present so clear or substantial an indication of foul play as to qualify as . . . an allegation of fraud." Id. (quotation omitted).  And it "must reveal both the true state of facts and that the defendant represented the facts to be something other than what they were." Newell, 728 F.3d at 796 (quotation omitted).

The true state of facts refers to the business relationship between Fastenal and Wells Technology, which Cherwenka believes makes Wells Technology ineligible for small business set-aside contracts.   The misrepresented state of facts is that Wells Technology wrongly advertised itself as a small business.  Cherwenka does not dispute that Wells Technology publicly disclosed the misrepresented state of facts (see Relator's Fastenal Opp'n Mem. at 21), thus the Court only considers whether the business relationship between Fastenal and Wells Technology was publicly disclosed.  Cherwenka

contends that no publicly disclosed information revealed Defendants' fraudulent scheme or the true nature of the relationship between Fastenal and Wells Technology as affiliates.

At the pleadings stage, it is not appropriate to address the underlying merits of Cherwenka's affiliation argument.  But the Court must identify what information would be relevant to determine whether the public disclosure encompasses the essential elements of his FCA claims.  "[E]ntities are affiliates of each other when one controls or has the power to control the other."   13 C.F.R. § 121.103(a)(1).   "In determining affiliation, SBA considers factors such as ownership, common management, previous relationships with or ties to another concern, contractual relationships, and joint ventures between entities."  Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d 1353, 1361 (Fed. Cir. 2015) (citing 13 C.F.R. § 121.103(a)(2), (c)-(h)).  Cherwenka argues that the information disclosed by the websites do not contain specifics regarding the nature of control Fastenal may have had over Wells Technology.

Here, Wells Technology published the details of its Fastenal distribution channel on its website as a downloadable presentation.  Wells Technology, Adding Value for Customers, https://www.wellstech.com/html/docs/Wells-Fastenal.zip (last visited Apr. 23, 2018).   This presentation outlines the specifics of Wells Technology's reseller distribution relationship with Fastenal, including the purchasing transactions process, and it states that Wells Technology: (1) is the "[v]endor of [r]ecords," (2) "[t]akes title and risk of loss," (3) "[a]ccepts purchase orders," and (4) "[c]ollects payments."  Id.  The Complaint refers to Wells Technology's website and includes screenshot images of this presentation.  (Compl. ¶¶ 84-91, 97-114, 116-19.)   The Complaint also references

Fastenal's website regarding company information and Fastenal's distribution relationship with Wells Technology.  (Id. ¶¶ 87-88, 106, 155-56, 187.)  Finally, the SBA's website mentions Wells Technology's "national distribution of industrial supplies," the "SBA-approved mentor-protégé agreement," and its relationship with Fastenal as a mentor.  Small Bus. Admin., Native American Minority-Owned Business Named 2009 Small Business Person of the Year, https://www.sba.gov/offices/district /mn/minneapolis/success-stories/native-american-minority-owned-business-named-2009 -small-business-person-year (last visited Apr. 23, 2018).  This publicly disclosed information appears to encompass the essential elements of the alleged fraud on which Cherwenka bases his FCA claims.  Indeed, as previously discussed, the majority of his 64-page Complaint relies on these websites as the basis of his allegations of fraud.

Even if the information on these websites does not encompass the essential elements of his alleged fraud, the documents and information disclosed to the SBA surely do.  The SBA representative investigating the mentor/protégé agreement requested documents memorializing Wells Technology's business relationship with Fastenal, including their distribution agreement, mentoring business agreement, and financial and employment data.  (SBA Letter at 2.)  And he asked specific questions about "[w]ho determines the price on Fastenal product[s] sold by Wells Technology," the number of people Wells Technology employs to work on the Fastenal distribution business, and the risks Wells Technology assumes under the distribution agreement.  (Id. at 2-3.)

Cherwenka argues that this information does not reveal all of the elements of the fraudulent scheme, but he fails to identify what information is missing, or what additional

information would be required.  The Court thus concludes that the essential elements of
Cherwenka's FCA allegations were publicly disclosed.

### 2.      Original Source

"A relator who qualifies as an original source is exempt from the public disclosure
bar," even if the essential elements of the FCA claims were publicly disclosed.
Ambrosecchia, 855 F.3d at 954.  An original source is an individual "who has knowledge
that is independent of and materially adds to the publicly disclosed allegations."   31
U.S.C. § 3730(e)(4)(B).   "Independent knowledge is knowledge not derived from the
public disclosure."  Newell, 728 F.3d at 797 (quotations omitted).  A relator's personal
knowledge does not materially add to FCA claims if essentially all of the knowledge
appeared in existing public disclosures; rather, it materially adds to the claims if it
substantially contributes to, or improves, a relator's allegations.  Paulos, 762 F.3d at 694-
95 (citing Kraxberger, 756 F.3d at 1080).

Cherwenka argues that he is an original source of the information because he
concluded that a fraudulent scheme existed after conducting his own investigation and
reviewing publicly available information that was supplemented by his personal
knowledge about the industrial supply industry.   He maintains that his investigation
included discussions with representatives of ICS and Cummins, who apparently told
Cherwenka that they knew they were taking advantage of the business relationship
between Fastenal and Wells Technology.   But these discussions failed to provide any
specific information about the fraudulent scheme, and they did not substantially
contribute to Cherwenka's FCA allegations.   Indeed, the Complaint alleges that these

discussions merely "confirm[ed]" what he had already suspected.  (Compl. ¶ 169.)  Thus, his discussions with ICS and Cummins representatives did not materially add to his allegations.

Cherwenka's reliance on his industry knowledge is also unavailing.  He fails to identify how his knowledge supplemented publicly disclosed information, aided in his discovery of the allegedly fraudulent scheme, or translated into any new or compelling fact.  See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys., 384 F.3d 168, 179 (5th Cir. 2004) (requiring a relator's investigation to "translate into some additional compelling fact" or "a new and undisclosed relationship between disclosed facts").  Cherwenka is therefore not an original source of the information.

The essential elements of these claims were publicly disclosed and Cherwenka was not an original source of the information.  Thus, the public disclosure bar applies and Cherwenka's FCA claims must be dismissed on that basis.

**CONCLUSION**

Cherwenka has failed to establish an actionable claim because his FCA allegations are precluded by the public disclosure bar and he did not plead fraud with sufficient particularly under Rule 9(b).  Accordingly, **IT IS HEREBY ORDERED that**:

1.     Defendant ICS Inc.'s Motion to Dismiss (Docket No. 53) is **GRANTED**;

2.     Defendant Fastenal Company's Motion to Dismiss (Docket No. 66) is **GRANTED**; and

3.     Defendant Wells Technology's Motion to Dismiss (Docket No. 81) is **GRANTED**; and

4.     Defendant Cummins's Motion for Judgment on the Pleadings (Docket No. 93) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: <u>May 3, 2018</u>

                                        *s/ Paul A. Magnuson*
                                        Paul A. Magnuson
                                        United States District Court Judge